This next case is Case No. 4-15-0948, People v. Wesley Whitfield, appearing for the Appellant as Attorney Gomez and for the Appellee as Attorney Legler. Good morning. Mr. Gomez, are you ready to proceed? Yes. You may. Good morning, Your Honors, Counsel, and may it please the Court. My name is Michael Gomez from the Office of the State Appellate Defender, and I am here on behalf of my client, Mr. Wesley Whitfield. The underlying premise of our criminal justice system, the reason we ask people to have faith in it, is that the process is fair. And in that vein, the courts have established rules to ensure that defendants are afforded a fair trial and are convicted solely based on competent, material, and properly admitted evidence. The criminal justice system and its attendant rules only work to the extent that the parties in the courts follow them. Here in this case, there are two significant errors that work together to deny Mr. Whitfield a fair trial. The first error was the admission of the entire interrogation video, about an hour long, relevant to the charges in this case, that included the officer's hearsay, improper opinion, and wholly irrelevant and duly prejudicial statements. To be clear, the case law makes it clear that otherwise improper evidence, such as the hearsay, improper opinion, and irrelevant... Counsel, how is it hearsay, what the officer said? Hearsay is defined as testimony of a third party often proved the truth of what's contained therein, isn't it? Yes, Your Honor. So how is what, in a conversation with the defendant, how is what the police are saying to the defendant as part of this conversation hearsay? Not to say that all of the statements are hearsay, Your Honor. How is any of it hearsay? Well, Your Honor, there are certain statements, such as Officer Daniels presuming that the extension, that Mr. Whitfield's son was hit with an extension cord and not a belt, as Mr. Whitfield said. Or plenty of other statements saying that when Mr. Whitfield suggested that the injuries may have been enhanced by makeup, and the officer responds, definitely not makeup. Or we know that it couldn't have been the grandmother and the aunt because they brought in the child... So these are statements offered to prove the truth thereof? Well, Your Honor... Or is it statements designed to elicit a response from the defendant? Well, at its core, Your Honor, these statements were considered by the jury. Are these statements designed to elicit a response from the defendant? Your Honor, these statements can be designed to elicit a response. Can be? Can be, Your Honor. You mean... So during the interrogation of the defendant by the police, the officer was planning and already doing his testimony for the jury? Your Honor, the intent of the officer is not at issue here. And more importantly, the interrogation tactics themselves are not at issue. It's the invisibility... And if we have a conversation, how can the conversation of what the defendant is saying be meaningful without what precedes it in the questions or statements of the police officer? Well, Your Honor, the defendant's statements are completely admissible against him at trial. And we're not contesting that. That's not my question. Correct. How can they be meaningful without the questions of the officers of the statement of the officer that put the statements of the defendant in context? Well, those statements that the defendant made in the video are perfectly understandable on their own. And just because statements otherwise may be admitted to provide context or meaning to statements, such as where a defendant might use pronouns, it, he, she, and need contextualization with the officer's statements, here we don't have that. Here, Mr. Whitfield made perfectly understandable statements on their own. Well, whose call is that, by the way, whether that's perfectly understandable or adequate? Well, when Mr. Whitfield says... No, I'm sorry. I've perhaps not been clear enough. Isn't this... Let me back up. If the state is offering this conversation, this videotape, and it's the view of the defendant that some or all of the statements of the police are, they're not hearsay, but perhaps prejudicial and unnecessary to establish a foundation for making meaningful the defendant's responses, isn't the obligation upon the defendant to raise this to the trial court rather than ask for the trial court to make a ruling with regard to, yes, I understand the statement made at the 47-minute mark. That's unnecessary and lauded enough. For instance... Yes, Your Honor.  No, Your Honor. Isn't the question of whether or not the defendant's statements are sufficiently clear in the absence of the questions or statements of the police officer one for the trial court's determination and trial court's exercise of discretion? Yes, Your Honor. When there is an appropriate objection made at the time. Okay. That didn't happen in this case, did it? Correct, which is why we have argued that this amounts to plain error, because it was an unpreserved error, and we acknowledge that Mr. Whitfield, who was proceeding pro se at trial, did not object to the admission of the entire interrogation video. And here, these statements were considered by the jury, because there was no limiting instruction, the jury considered these statements for their truth. Why should we be inclined to bail the defendant out from his own silliness of declining to be represented by counsel and then depriving the court of having counsel raise objections, erase points, which competent counsel would have done, perhaps, with regard to these portions of this interrogation? Well, Your Honor... He chose to go pro se, didn't he? And it was his constitutional right to do so. Okay, sure, he had a constitutional right to be stupid. Why should this court, the trial court, come to protect him from the silliness, the unwise choice he made, so that you're now saying, oh, this is plain error. Hey, I'm the trial judge. I was a trial judge for a long time. I'm sitting there and thinking, I'm not going to be parsing through the questions and comments made by the police during this interrogation. One, it's not hearsay by definition. But two, to the extent some of it might be unduly prejudicial, I'm going to wait for the defendant to raise this. And he never did, did he? Well, Your Honor, the third district, People v. Hardiman, reviewed an issue, an error very similar to this one, where the defendant was represented by counsel and an entire interrogation video was nonetheless admitted against that defendant and including the officer's unduly prejudicial statements that did not elicit any meaningful responses from the defendant, just as they did here. Mr. Whitfield's statements didn't change. Was there any objection raised in Hardiman? I don't remember, Your Honor, but the entire interrogation video was admitted, and the reviewing court, the third district, held it. The Hardiman court said generally statements by an investigating officer during an interview with a suspected defendant are admissible if they are necessary to demonstrate the effect of the statement on the defendant or to explain the defendant's response. Is that correct? Yes, Your Honor. Why should we accept that? Why should we accept the standard that if they are necessary? Why shouldn't we instead say if they are helpful? I'm sorry, helpful? Helpful. Well, Your Honor, given the case law, cases have overwhelmingly said, even Tice, it was the second district in Tice also said where the statements are necessary, where the officer's statements are necessary. Why should we accept that? Why does that make good sense? The Supreme Court of Illinois has never said that, has it? Not to my knowledge, Your Honor. Why should, if I'm the trial judge and I'm listening to this interrogation, why should I be deciding is it necessary that the jury hear the officer's questions or statements to the defendant as opposed to is it helpful to the jury to hear it? Well, Your Honor, if it were necessary or helpful, it doesn't make a difference in this case because it didn't elicit a response. I didn't ask you if it makes a difference in this case. I'm looking for guidance as to what the standard should be. Why shouldn't we adopt a standard of helpful and reject the standard of necessary? Because, Your Honor, in that decision that a court would have to make, those officer's statements do not help prove any relevant material fact. Therefore. Well, I'll ask you one last time. Why shouldn't we adopt the standard that the officer's statements or questions to the defendant should be helpful, if they would be helpful to the jury to understand what the defendant is saying in his remarks, as opposed to necessary, which is a much higher standard in my judgment? Well, Your Honor, it is, of course, up to this court to decide that. Well, I'm asking for you to explain. Give me your best argument on why helpful doesn't work and necessary should be used. Well, Your Honor, there are many improper and incompetent evidence that would be helpful for a jury to understand. But when we're talking about officer's statements, which interrogation tactics, officers are given great leeway in interrogating defendants. To allow all of those officer's statements, to allow them against the defendant, would be unduly prejudicial. And, of course, in certain instances, it would be necessary where a defendant answers yes to an officer's question. Of course, the jury would need that officer's statement in order to understand what that response is. But in this case, these officer's questions and statements did not elicit any of these incriminating responses. I would direct this court to the 25th minute, 18th second, where Officer Daniel says, If you're their only disciplinarian, and we've ruled out that there's no way Grandma could have made these marks happen in the hour, hour and a half, between the time she left your place on Johnson to the time they got to the hospital, because this would not be like that, you do discipline them, you spank them. I don't see any other possibility of him receiving these marks other than by your hand or your belt. Do you? That didn't elicit a response. Well, by definition, it calls for a response. I don't see any other way. Do you see any other way? Your Honor, that does not elicit a response which is appropriately admissible. Well, we don't know. By asking the question, we don't know what response he's going to get. The officer, the response might have been, Oh, yeah, there is another way, and here it is. Would his question then have been okay? Your Honor, it depends on the defendant's answer. Well, you see, that's the whole idea behind showing the entirety of the question and process. Let's see what the defendant says. Isn't it significant that the defendant said nothing? He didn't offer another response? Your Honor, I would say that the defendant is not obligated to respond to the questions at all. Not so. He could have stopped the interrogation. Correct. So the question is, for the jury's evaluation, the cop said, Is there another way? The very question you just identified. And the defendant doesn't come up with one. Why isn't that probative of what his thinking is and how he viewed his own behavior? Your Honor, for several reasons. First, the defendant is not required to respond to any of the officer's questions. Why is not required even a probative response to my question? How is that, you know, he's saying, Well, it was on a Tuesday. It makes no sense, counsel, to say it's not required. Of course it's not required. I just told you he could have stopped his interrogation. So that's unhelpful. What's the next? Well, as applied to this particular question, Your Honor, this is the same type of statement that the court in Hardeman found was erroneously admitted. It not only evaluates the evidence that the police had gathered against Mr. Whitfield. That is unduly prejudicial because, one, it didn't elicit any response from Mr. Whitfield. So maybe this is all one reason why Hardeman should be rejected. Your Honor, this. That is, if you can't provide a good reasoning underlying it other than say Hardeman didn't approve it. Well, it's not only Hardeman that states that these improper statements, all of these improper statements, whether it be because of hearsay or improper opinion or simply and most basically here, that they are irrelevant and unduly prejudicial. And their prejudicial effect substantially outweighs whatever probative value that they may have. Your argument here is that it was error to allow him to admit these statements from the interrogation video, right? Yes. The defendant is representing himself. What was the trial court supposed to do in order to avoid error, as you suggest here, error was made? What was the trial court supposed to do? Well, Your Honor, at that time, the trial court could have seen the entirety of the video or held a hearing outside of the presence of the jury to determine the admissibility of the entire interrogation video. Well, no one had asked him to do that. I'm sorry? No one had asked him to do that. All right. And part of the plain error standard is that there's clear and obvious errors. Let's go backwards. I want to follow up with Justice Harris's question. No one had asked the judge to review this for any particular purpose prior to the trial, had they? Correct, Your Honor. So he's just supposed to, he or she is supposed to sui sponte, stop the trial in midstream, and then conduct a sui sponte motion to suppress. I'm not saying that there is a sui sponte duty on the court to follow that sort of procedure. Following up his question, how is he or she to do this? Well, the argument that we're making, because it is a plain error argument, is that these errors were so clear and obvious that once these statements started appearing in the interrogation video, it would have been incumbent upon a court to, in the interest of preserving Mr. Whitfield's rights to a fair trial and to make sure that only relevant providers. How does the trial court glean what Mr. Whitfield's trial strategy may be? How is the trial court to determine that there may not be some reason why he wants all of this in? Maybe he wants to argue that the cops were badgering me, that they, yes, I made these statements, but I made them only as a result of the undue psychological pressure that they put on me. Look how they came after me in this video. How is the trial judge in advance, in the midst of the trial, supposed to determine which parts of this questioning, in hindsight, are, quote, using your terms, irrelevant or immaterial or prejudicial? Just from a practical standpoint, how is the judge supposed to make that determination under this particular set of circumstances we have here? Well, Your Honor, I don't have an answer to how a judge who is charged with deciding what evidence is admissible and is not and for what purposes should do. And for that reason, there is a claim that we don't just do that on our own. We leave it up to the attorneys to bring those issues to us. Yes, Your Honor. Yes. And for that reason, there is a plain error standard for errors that were not brought up at trial and not raised in a post-trial motion. Which now kind of gets us back to Justice Steinman's issue. So if a defendant makes the very ill-reasoned choice to represent himself in a serious criminal matter, the trial judge, because of his constitutional right, is required to let him do that and then has to live with all of the plain error arguments that are going to come up upon conviction if conviction ensues. And yes, Your Honor, just because a defendant, such as Mr. Whitefield, chooses to represent himself, exercise his constitutional right to do so, it doesn't mean that errors, that prejudicial errors that occurred at his trial should go unaddressed or unreviewed later on. So if his tactical decision is, look, I know I made a statement. I know I told him I beat my kid. I know I told him I went too far. I know I told him I really didn't mean to cause open wounds. I already know I did all these things and said all these things. The best thing for me to do is represent myself, make no objections, make no motions, and hope that some very well-qualified appellate counsel argues plain error on my behalf at a later time. And the trial judge has left with that dilemma. Is that what you're saying? That is not what I'm saying, Your Honor. I mean, Mr. Whitefield did vigorously represent himself. He did not sit idly by. He presented witnesses. Well, I didn't say he didn't vigorously represent himself. I'm saying, what if his tactical decision was, I already know I told him everything. I admitted everything in the statement. So if I just represent myself and let all this stuff come in, my appellate lawyer can take care of it. Well, Your Honor, the justice system and the rules that the Illinois Supreme Court has established, all of the state's jurisprudence has established that plain error is available for unpreserved errors at trial. And if those errors do happen, and they work, not just that they occurred, but that they severely threatened the scales. It's not just that the errors happened. It's that the errors were extremely prejudicial. How prejudicial can they be when the guy says, yeah, I did it, I beat him, I went too far, I didn't mean to hit him. The reason I hit him over here was because he kept moving when I kept whipping him with this belt. Yeah, probably the side of the belt might have caused those wounds to make it look like it was an extension cord. When he already knows he said all that. Well, yes, Your Honor, he said to a certain extent some of those statements in the interrogation video. However, the jury saw the entire interrogation video replete with the officer's irrelevant and unduly prejudicial statements. And that was the last thing they saw before Mr. Whitfield presented his defense, which also presented alternative causes to those injuries. Now, the jury was unable to, by the time that the jury was able to receive Mr. Whitfield's defense, it had already not only gotten the state's case, but the state's case bolstered by the officer's statements throughout the interrogation video. And turning to the second issue, and a very significant one, is because Mr. Whitfield's primary defense witness, his father, Luther Whitfield, was improperly impeached with extrinsic evidence of the incorrect transcript where he discussed the accident at a previous bond hearing. Was an objection made to it? No, Your Honor, an objection was not made. So what? Well, an objection was made at the time. There was no confrontation of Mr. Whitfield during the state's cross-examination. But at the time that the state attempted to introduce this January 27, 2015, bond hearing transcript, Mr. Whitfield did alert the court to the fact that this was the wrong transcript, that the state was introducing something that did not prove that Luther did not testify about the accident. Mr. Gomez, I'm afraid you're out of time, but you will have an opportunity in rebuttal. Yes, Your Honor. Thank you. Ms. Legler. May it please the Court, good morning, Your Honors, Counsel. My name is Erin Wilson-Legler, and I appear on behalf of the state. Defendant raises two issues on appeal, both of which he concedes are forfeited. First, defendant argues that the trial court erred by allowing defendant's interrogation video to be admitted. And second, defendant argues that the state's impeachment of Mr. Whitfield, or Mr. Luther Whitfield, was improper. Ms. Legler, in the defendant's brief, mentioned as made a couple of times at least, that this was a credibility contest. This trial was a credibility contest. Was it? No, Your Honor. It was not a credibility contest. And that brings me to my first point. Regardless of whether defendant's arguments establish error, defendant cannot establish plain error in this case because the evidence was not closely balanced. Briefly, defendant confessed to the acts that constitute aggravated battery of a child when he stated that he whipped NW with a belt, causing the injuries that appear in the state's exhibits, the photographs of the child. Defendant's witnesses do not undermine or contradict defendant's confession. And defendant's trial theory that NW's injuries were caused by a car accident was directly contradicted by NW's treating physician, who stated that those injuries are not the type of injuries that could be caused by a car accident. The evidence in this case was not closely balanced and therefore cannot rise to the level of plain error, regardless of whether defendant establishes error at all. Which brings me to my second argument, Your Honors. In this case in chief, defendant moved to admit the video of defendant's interrogation video. And defendant did not object and so the trial court admitted the video and allowed it to be published to the jury. In addition to forfeiture, this particular case raises some additional errors with respect to waiver. Because in Peeble v. Johnson, this court examined the practical effects of the failure to contemporaneously object at trial. Which is part of the concerns that Your Honors were addressing with defendant. This court noted in Peeble v. Johnson that forfeiture was particularly appropriate because the foundational issue raised in that case could have easily been cured had defendant contemporaneously objected at the time in trial. And that concern is directly applicable here because if defendant had raised these concerns about the admissibility of the officer's comments and questions, the trial court could have easily addressed those concerns and decided whether or not redaction was appropriate. But Mr. Gomez is contending that because the defendant represents himself, essentially we need to take a look at a different standard to be applied when it's a pro se defendant who may not understand or know the significance of making those objections. Well Your Honor, pro se defendants are held to the same standards and the same procedures that all defendants are held to in trials. Trial courts are not required to sua sponte assess the admissibility of evidence. And indeed that would be improper because as Your Honor was noting earlier, the trial court doesn't know what defendant's trial theory is going to be. In fact here, defendant attempted to replay this video, he asked to multiple times throughout his case in chief, but he was denied, the trial court denied defendant's request because of time constraints. The trial court didn't think it would be appropriate to replay the entire hour or so long video. But had defendant's request been granted, he would be prevented from challenging any aspect of the video because it would be invited error. Moreover, in People v. Caffey, our Supreme Court noted that where a defendant questions a witness with respect to statements on cross-examination, the defendant thereby waives the ability to challenge those statements on appeal. Pages 20-38 of Volume 21 of the record contain defendant's questioning of Officer Daniels on cross-examination. And in those pages we can see the defendant is asking Officer Daniels about the statements that Officer Daniels made and the questions that Officer Daniels asked. So defendant cannot now complain on appeal that those statements were erroneously admitted. In sum, it's hard to imagine how a trial court can abuse this discretion by admitting evidence to which the opposing party does not object. And given defendant's use of the video and the statements contained therein, forfeiture is particularly appropriate in this case. Nevertheless, admission of the video was not erroneous because the statements contained therein did not constitute improper lay opinion, they were not hearsay, and the video itself was not unduly prejudicial as the court found in People v. Hardeman. As to Luther's, the impeachment of Luther, you've already indicated that it's your belief that the evidence was not closely balanced. If that were the conclusion of the court, then we wouldn't look to whether or not there was clear and obvious error here. However, looking at that first issue of whether or not there was error, it would appear, based on reading of the briefs and the transcript, that Luther was not confronted with his statement from the bond reduction hearing. Is that your assessment? Your Honor, Luther was not confronted with the transcript itself. However, Luther stated during cross-examination that he did testify about the car accident at defendant's bond hearing. That itself was the impeachable answer that the state elicited on cross-examination, and pursuant to this court's recent decision in People v. Lewis, the state was then permitted to bring in extrinsic evidence contradicting that statement, which the state did in rebuttal. It would appear from the defendant's brief that he confuses the procedures of substantive and non-substantive impeachment evidence by citing two cases involving substantive impeachment pursuant to 115-10.1. This case dealt with non-substantive, just run-of-the-mill standard impeachment. And pursuant to Lewis, the proper procedure would be to elicit an impeachable response from the witness and then later confront the witness with extrinsic evidence completing the impeachment. And that's what the state did here. Well, how was he confronted with his statement? He never was asked about it while he was on the stand, was he? He was asked, let me back up, the state asked Luther whether or why he did not previously report the car accident to the proper authorities. Luther responded, I did, I testified about it at the bond hearing. That's the answer and that's the confrontation. Therefore, the state was then duty-bound pursuant to Lewis to present extrinsic evidence contradicting that statement, which is what the state did in rebuttal when it produced the transcript of the defendant's bond hearing, wherein Luther testified, but he did not talk about the car accident in that hearing. Therefore, the state does not find any error with respect to the procedure that it used in impeaching Luther in this case. So it was the absence of the statement. In other words, he was asked, why didn't you talk about this automobile accident earlier? Was that the question, essentially? Yes, Your Honor. And he said, I did at the bond hearing? Yes, Your Honor. And then the state presented the evidence at the bond hearing where he didn't do that. Correct, Your Honor. Then he also got to say that there was a separate bond hearing, that they did transcript the wrong bond hearing. There was another bond, yes, Your Honor, there was another bond hearing. And I believe that the defendant did talk about the car accident at that hearing. However, it would have been the defendant's responsibility to present that transcript in servile, which he was explicitly given the opportunity to do so by the trial court on the record. The defendant declined that opportunity, and it was his responsibility at that point. The state completed its impeachment, and the defendant could have undermined that impeachment, but he didn't do so, even though he was explicitly told that he could, and explicitly told how to do it. And for these reasons, the state does not, excuse me, for these reasons, defendant fails to persuade that error occurred at all at trial, let alone plain error, and the state would respectfully request that this court affirm defendant's conviction. Thank you, Your Honors. Thank you. Mr. Gomez, rebuttal argument? Your Honors, I'd like to start with the improper impeachment of Luther Whitfield. The state did not confront Mr. Whitfield. It did not question him about the date, time, circumstances of any of his previous testimony at the first bond hearing or the second bond hearing. Let's back up. He was asked, when he testified, why didn't you talk about the sum of the losses? Wasn't that it? Yes, Your Honor. And he said, oh, I did, at the bond hearing. Yes, Your Honor. Okay. Now, let's assume for the moment that wasn't true. What was he supposed to be confronted with? That is, there was no inconsistent statement to confront him. There was the absence of a statement that he made at the bond hearing. Isn't that right? So, to complete the impeachment, why would the state be required to do more than introduce the bond hearing to show that he never said any such thing? Well, first, Your Honor, in an impeachment by omission, the state, there would have had to have been a reason to testify about that at that particular hearing. This is not a helpful, responsive answer, Counselor. I asked you a specific question. Why wouldn't it be adequate for the state to present the testimony at the bond hearing where Luther testified to no such thing, contrary to what he had just said? Well, Your Honor, the point of the conference, of the rule to confront witnesses, is to allow them an opportunity to explain if there is an inconsistency, is to prevent unfair surprise to the witness and to the defendant. Well, you see, the problem is, Luther, when asked why didn't you say this earlier, essentially volunteered this information, did he not? Oh, he did say it earlier at the bond hearing. That is true. Okay. Well, what was he supposed to be confronted with to lay a more appropriate foundation for impeachment? In other words, are you saying the state had to present the entire bond hearing to Luther at that time to show to Luther that, in fact, he never said it? Yes, Your Honor, in accordance with... Is that your position? The state should have asked Luther about the time, date, and circumstances of the prior statement as they are required... But there was no prior statement. That's my whole point. It's the absence of any statement that is the impeaching factor here, is it not? Well, if there is an absence of a prior statement, then the state, in order to confront that witness, would say, when did you make that statement? If there is... Well, he already said so. I said at the bond hearing. Mr. Gomez, let me just interrupt you for a moment. Isn't it relevant to your response that there were two bond reduction hearings, and if I'm not mistaken, it wasn't mentioned at one, but it was mentioned in the second? Yes, Your Honor. And that's the main point here, is that he did testify correctly. It's an excellent point, but I want to back off for a moment. Let's assume there was only one bond hearing, and he never said anything at that one bond hearing. What else would the state be required to do to complete the impeachment? Well, Your Honor, the state would, in accordance with the case law, the state would have to confront Mr. Confront him with what? Confront him with the transcript or... So the state has to have the whole transcript of the bond hearing at that point to confront him to show that... To give Luther Whitfield an opportunity to explain whatever perceived inconsistency there was in order to achieve that purpose of the confrontation rule, then yes. So the state has to, at that point, have a transcript of the bond hearing ready to go and present it to the witness, or they can't later on present the transcript of the bond hearing to demonstrate he never said it. The state can recall the witness if it would like to properly confront. There is a procedure that must be followed in order to impeach a witness, whether it's for substantive or non... That's when you're confronting him with a prior inconsistent statement. What's the procedure to confront a witness who says I made a statement at a certain hearing that I didn't? You have to show the whole transcript of the hearing to the witness at that moment? Well, not at that moment, Your Honor, but... What case law says that, counsel? Your Honor, this in accordance with all of the jurisprudence on impeachment with prior inconsistent statements. That's impeachment that's confronting him with a prior inconsistent statement. Here he's being confronted with the absence of a statement. Which is also an inconsistency under the case law, Your Honor. Well, that goes back to my question. I want to be real clear on this. What is it that you're saying he needed to be confronted with in order to lay the foundation for impeachment? Which questions about the time, date, circumstances of that prior statement that apparently... But there was no prior statement from the state's... Or at the hearing that allegedly he did not make. So, okay, let's go back for the moment. Luther has now testified, yes, I made... And let's assume there's just one bond hearing. I don't want to get complicated. Luther says, yes, I told that story about the auto accident. I did that at the earlier bond hearing. You're the prosecutor. You believe this isn't true. You believe he never said any such thing. Tell me the steps you're now going to take to complete the impeachment. Well, I would ask Luther Winfield, what date was that? I don't remember. He says it was sometime past. Now what? What questions were you asked? What did you state? What did you actually state on the record? I said there was this earlier accident. Okay. And then once Mr. Winfield, if I did not have the transcript of that bond hearing at that time, I would later recall Mr. Winfield... You have to recall him? To confront the witness and give him an opportunity to explain. Is there case law that deals with the absence of a statement that says any of this is required? Your Honor, if there is an absence of a statement, that is also treated as an inconsistency. So you've got some case law that says this is what's required to complete impeachment when it's the absence of a statement? There's case law that says what is required when there is an inconsistency, which includes absences of statements. And here the need for confrontation would have easily explained that it was not the January 27, 2015 hearing transcript. It was the July 15, 2015 hearing transcript. All of which got brought out. I'm sorry? All of which got brought out. No, it's now part of the record on appeal. It's crystal clear on appeal. In fact, he confronted the prosecutor and he said, don't you remember? You were there. It was the other hearing, not that first hearing. Yes, Your Honor. Mr. Whitfield did say that. And all that came out in front of the jury? Yes. Oh, no, it was not in front of the jury. It was in front of the judge. Okay. So that was at the hearing that they had. Right. This was outside the presence of the jury where the state sought to admit and read to the jury the entire January 27, 2015 transcript showing that Mr. Luther Whitfield appropriately did not testify about the accident. And Mr. Whitfield told the judge and the state, that's not the right one. It was the one in March. It was really July and it was just a few months earlier. Then the state was given permission to, the court admitted that transcript. The state was given permission to read it to the jury. The judge told Mr. Whitfield, go get that other transcript if you want it, without any direction as to where he could even get it or anything. Well, if he was represented by counsel, counsel would have known what to do to demonstrate, in fact, this was a other hearing and it wasn't impeaching of Luther because that's what had happened, but because he chose to be represented by himself and he didn't know what to do about it, the jury never heard anything further. Wouldn't that be correct? Well, Your Honor, his exercise of his constitutional right to do so. Wouldn't that be correct, what I just described? No, Your Honor. The fact that Mr. Whitfield represented himself and the fact that there was an accurate transcript out there that Mr. Whitfield could not obtain or did not obtain does not make the transcript that was admitted and read to the jury permissible. It does not make that transcript permissible. Why not? Why wasn't it permissible? Because that's a hearing in which he didn't say it. If there was a confusion, why isn't the burden on him to clear it up? Well, the confusion is the purpose of the confrontation rule is to avoid confusion. To avoid confusion, to give the witness an opportunity to explain. Had the witness been given that opportunity to explain, which is what played out before the judge and was never proven, then Luther Whitfield would have said no. It was not the first bond hearing where it seems kind of irrelevant that he even testified. It was the second one where the entire purpose of that second bond hearing was to seek a continuance and to try to get Mr. Whitfield to get out of custody to obtain the medical records related to that auto accident. Mr. Gomez, we've gone well past the time, and you've been responding to questions from the court. Thank you. Counsel, the case will be taken under advisement and a written decision shall issue. Thank you. Thank you.